### THE NIAGARA.

(District Court, W. D. New York. July 21, 1922.)

No. 1215.

Shipping ☞117—Transferee of bill of lading may sue for breach of contract of carriage.

Under Canadian law, as well as that of the United States, the unqualified transfer of a bill of lading to order notify vests the transferee with a right of action against the carrier vessel for breach of contract by making delivery to the party to be notified without production of the bill of lading.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Admiralty. Suit by the Molsons Bank against the steamer Niagara; the Rochester Steamship Company, claimant. On exceptions to libel. Overruled.

Locke, Babcock, Spratt & Hollister, of Buffalo, N. Y. (Louis L. Babcock and Evan Hollister, both of Buffalo, N. Y., of counsel), for libelant.

Brown, Ely & Richards, of Buffalo, N. Y., for claimant.

HAZEL, District Judge. The libel alleges that the master of the steamship Niagara issued and delivered at Port Arthur, Ont., a bill of lading to the Russel Timber Company Limited, then owner of certain rough spruce pulpwood which he agreed to transport in good order to Appleton, Wis., and deliver to the order of libelant, the Molsons Bank. The master, under the terms of the bill of lading, was to notify the Riverside Fiber & Paper Company on arrival of the cargo at Appleton. On the day of delivery of the bill of lading to the consignee, it drew its two certain sight drafts, with the original bill of lading attached, on the Riverside Company. The drafts and original bill of lading were presented to libelant, who discounted them for value and paid the proceeds thereof to the drawer. Subsequently, the libel alleges, through the negligence of the master of the carrying steamship, the pulpwood was delivered to the "notify party," the Riverside Company, without requiring the latter to produce and surrender the bill of lading and payment of the drafts discounted by libelant, in violation of the terms of the contract of affreightment.

The basis of recovery against the steamship is predicated upon breach of contract of affreightment as a result of which libelant sustained damage, the drafts not having been paid on presentation, in the amount of $20,544. Respondents contend that the libel is not maintainable for the reason that libelant was not in fact a party to the shipping contract, that it was not liable for the freight, and in fact contractual obligations did not arise, that libelant's remedy is against the master for conversion, and, moreover, that the Canadian law, in view of the place where the contract was made, must be applied.

Assuming the latter contention to be true, the law of the country where the bill of lading was delivered and the drafts issued is not different from the prevailing law of the United States. The Canadian Act, which was taken from the English Bills of Lading Act of 1855 (18 and 19 Vict. c. 111), provides as follows:

"Every consignee of goods named in a bill of lading, and every indorsee of a bill of lading to whom the property in the goods therein mentioned shall pass, upon or by reason of such consignment or indorsement, shall have transferred to and vested in him all rights of suit, and be subject to the same liabilities in respect of such goods as if the contract contained in the bill of lading had been made with himself. * * *"

The act was passed to confer the right of holders of bills of lading to enforce the contract of carriage in their own behalf—a right denied them by the common law.

It is argued that under the Canadian statute as it has been interpreted by English decisions, libelant was not vested with ownership of

the cargo, but only derived a special property right therein analogous to a pledge. Reliance is placed on Sewell v. Burdick, 10 App. Cas. 74, to support this contention. In that case the bills of lading were indorsed in blank and deposited with bankers as security for loan made by them to the shipper, and the House of Lords decided on appeal to it that the bankers were not liable for the freight, inasmuch as the transaction was only a pledge of the cargo, and only a special property right had been acquired. But the facts alleged in the libel here are essentially different. The unqualified transfer of the bill of lading to libelant was in my opinion in legal effect a transfer to it of the cargo described in the bill of lading, and only upon its order could delivery be made to the Riverside Company, the party to be notified on arrival of the cargo at its destination. The Thames, 14 Wall. 98, 20 L. Ed. 804. To make delivery of the cargo of pulpwood without requiring the production and surrender of the bill of lading, and without the order of libelant, was a breach of contract for which the steamship may be held liable in rem to establish a maritime lien against her. Benedict's Admiralty (3d Ed.) §§ 285–290; Maggie Hammond, 9 Wall. 435, 19 L. Ed. 772. Although the libel alleges the negligence of the master in delivering the cargo without order of libelant, the action is nevertheless one for breach of contract of affreightment. Dittmar v. Frederick Starr Contracting Co., 249 Fed. 437, 162 C. C. A. 3.

The exceptions filed are overruled.